THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GLORIA VALDEZ, Defendant-Appellant.

First District (3rd Division)   No. 1—90—3256

Opinion filed May 26, 1993.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Theodore Burtzos, Susan Schierl, and Christopher Daddino, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant, Gloria Valdez, was convicted of possession of controlled substance with intent to deliver based on the discovery of cocaine in a rest room of an airplane en route from Florida to Minnesota with a stopover in Illinois. The trial court imposed a 15-year prison term and a $50,000 fine.

On appeal defendant asserts that (1) the State failed to prove the crime beyond a reasonable doubt; (2) the State of Illinois did not have jurisdiction to try her for the crime because it did not occur in Illinois (Ill. Rev. Stat. 1985, ch. 38, par. 1—5); (3) the $50,000 fine imposed should be reduced because she is entitled to a credit of $5 per day for each day in custody before sentencing (Ill. Rev. Stat. 1987, ch. 38, par. 110—14); and (4) the mittimus must be corrected because it states the wrong offense of which she was convicted.

We find that venue in Cook County was not proved beyond a reasonable doubt and thus reverse defendant's conviction.

The facts are not in dispute. On September 19, 1986, three passengers, i.e., defendant, Victor Valdez and Guillermo Valdez, boarded Northwest Airlines flight 701 in Miami, Florida. Flight 701 originated

in Miami and was destined for Minneapolis-St. Paul, Minnesota, with one scheduled stop in Chicago, Illinois.

Prior to boarding, an airline ticket agent informed an airline service manager that two one-way tickets from Miami to Minnesota had been purchased for cash at the gate by Victor Valdez and Guillermo Valdez. Each ticket cost $160.

Prior to the plane's departure, a flight attendant noticed that Victor and Guillermo Valdez separately entered a rest room, about 30 seconds apart. The flight attendant thought that such behavior was unusual because passengers do not usually use the rest room before takeoff.

The airline service manager boarded the plane and the airline ticket agent identified Victor and Guillermo Valdez. The manager escorted the two men, with their carry-on luggage, off the plane and explained to them that "due to certain regulations, we had to bring them outside due to the fact that they fit certain criteria, and we were obligated to ask them off the plane." The manager and a security agent searched the two men and their luggage for weapons but found none. The manager apologized to the two men, who then reboarded the plane.

After takeoff, the flight attendant searched the rest room which Victor and Guillermo Valdez had previously entered and found four plastic sandwich-type bags containing cocaine with masking tape wrapped around each bag. The four bags were found underneath a trash liner in a garbage container located in a compartment below the sink. The flight attendant then locked the bathroom door, talked to the captain, and reopened the bathroom door. Later during the flight, the flight attendant saw the two men attempt to use the bathroom where the bags were found but it was occupied.

When flight 701 arrived in Chicago, four law enforcement officers boarded the plane, watched the passengers departing and remaining, and removed the four bags of cocaine from the bathroom. George Mays, a Chicago police officer, escorted defendant off the plane while other agents from the Drug Enforcement Administration escorted Victor and Guillermo Valdez off the plane.

In the passenger waiting room, Officer Mays asked defendant for identification and she produced her one-way airline ticket from Miami to Minnesota issued in the name of Louise Diaz and purchased with cash on the same day. After a field test revealed that the substance in the plastic bags was cocaine, defendant denied that the drugs belonged to her. Defendant stated that she was en route to Minneapolis to visit her son and perform witchcraft for $300. Defendant was al-

lowed to leave after she permitted the officers to search her purse and to have her fingerprints and photograph taken. Defendant then was allowed to leave.

Subsequently, defendant's fingerprints were found to match the latent prints recovered from the masking tape which sealed the plastic bags containing the cocaine. Defendant was arrested on March 15, 1988, approximately 1½ years after the flight at issue.

The jury found defendant guilty of possession of a controlled substance with intent to deliver. The trial court sentenced defendant to 15 years in prison and imposed a fine of $50,000.

On appeal, defendant first asserts that the State failed to prove beyond a reasonable doubt that she possessed cocaine in Cook County as charged in the information. Defendant concedes that sufficient proof exists to establish her possession of the contraband at an earlier point in time, most likely in Florida.

On the other hand, the State contends that either defendant or the two Valdez men for whose conduct she was allegedly "accountable, had constructive possession of the cocaine, with the requisite intent to deliver, at the time the plane passed through Cook County."

■ As a threshold matter, we note that the Illinois Supreme Court recently reaffirmed the rule that "venue is a material allegation which must be proved beyond a reasonable doubt along with the other elements of an offense." *People v. Hagan* (1991), 145 Ill. 2d 287, 300, 583 N.E.2d 494.

The State acknowledges the *Hagan* decision but nevertheless urges this court to reexamine the supreme court's mandate that venue must be proven beyond a reasonable doubt. However, we cannot entertain the State's request since an appellate court is bound by the decisions of the supreme court. *People v. Pruitt* (1992), 239 Ill. App. 3d 200, 606 N.E.2d 866; *People v. Palmer* (1986), 141 Ill. App. 3d 234, 238, 490 N.E.2d 154.

The information in the present case specifically stated "that on or about September 19, 1986, in the Cook County, Illinois Gloria Valdez committed the offense of possession of controlled substance with intent to deliver" in violation of section 401(a) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)).

■ Section 401 provides that "it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance." Ill. Rev. Stat. 1985, ch. 56½, par. 1401.

To establish the crime of unlawful possession of narcotics with intent to deliver, the State must prove that the defendant had knowl-

edge of the presence of narcotics and the narcotics were in the defendant's immediate and exclusive control. *People v. Ray* (1992), 232 Ill. App. 3d 459, 461, 597 N.E.2d 756.

The dispute in the present case concerns the possession element of the crime which may be established by evidence of either actual or constructive possession. (*People v. Maiden* (1991), 210 Ill. App. 3d 390, 397, 569 N.E.2d 120; *People v. Chicos* (1990), 205 Ill. App. 3d 928, 935, 563 N.E.2d 893.) Only constructive possession is at issue here.

■ The key to constructive possession is control of the premises where the contraband is found. "Where drugs are found on premises rather than on defendant, the State must prove that the defendant had control of the premises in order to permit the inference that defendant had knowledge and control over the narcotics." *Ray*, 232 Ill. App. 3d at 462 (the court reversed the defendants' convictions due to scant evidence linking the three defendants to the apartment where the drugs were found).

Since possession may be joint (*People v. Embry* (1960), 20 Ill. 2d 331, 335-36, 169 N.E.2d 767), mere access by or presence of other persons to the area where drugs are found is not sufficient to defeat a charge of constructive possession. (*People v. Eiland* (1991), 217 Ill. App. 3d 250, 261, 576 N.E.2d 1185; *People v. Kissinger* (1975), 26 Ill. App. 3d 260, 263, 325 N.E.2d 28.) If two or more people share immediate and exclusive control or share the intention and power to exercise control, then each has possession. *Eiland*, 217 Ill. App. 3d at 261.

Indicia of control of the premises where contraband is found sufficient to constitute constructive possession generally, but not always, include factors such as ownership of the car (see, *e.g.*, *People v. Melgoza* (1992), 231 Ill. App. 3d 510, 530, 595 N.E.2d 1261), rental of the apartment (see, *e.g.*, *Embry*, 20 Ill. 2d 331, 169 N.E.2d 767), or habitation of the premises (see, *e.g.*, *People v. Lesure* (1990), 195 Ill. App. 3d 437, 552 N.E.2d 363; *People v. Hester* (1980), 87 Ill. App. 3d 50, 409 N.E.2d 106). Thus, generally, the owner of a house or the tenant of an apartment or the owner of a car has been held to possess drugs found on their respective premises.

In contrast, a mere visitor to a residence (see, *e.g.*, *Ray*, 232 Ill. App. 3d 459, 597 N.E.2d 756) or one occupant of several persons in a vehicle (see, *e.g.*, *People v. Gore* (1983), 115 Ill. App. 3d 1054, 450 N.E.2d 1342) does not generally satisfy the immediate and exclusive control element so as to constitute constructive possession.

■ In the present case, defendant clearly did not own, rent or reside in the airplane where the cocaine was found for the purpose of

constructive possession nor is there any evidence that she entered the rest room at any time. At best, defendant was one passenger of more than 70 occupants (approximately 65 passengers plus crew members) on the plane. The mere presence of a defendant in the vicinity of contraband cannot establish constructive possession. *Ray*, 232 Ill. App. 3d at 462.

The State, however, asserts that defendant's fingerprints were circumstantial evidence sufficient to connect her to the crime and that defendant and the two Valdez men engaged in suspicious behavior linking them to the crime.

Although possession may be proved by circumstantial evidence, "suspicion, no matter how strong, is insufficient to establish the elements of unlawful possession." (*People v. Evans* (1986), 143 Ill. App. 3d 236, 239, 492 N.E.2d 1036.) Neither suspicious behavior in the vicinity where the contraband is found nor mere proximity to the contraband is sufficient to establish possession absent proof that the defendant had control over the place where the contraband was discovered. *Melgoza*, 231 Ill. App. 3d at 529; see also *People v. Jackson* (1961), 23 Ill. 2d 360, 178 N.E.2d 320; *People v. Stewart* (1975), 27 Ill. App. 3d 520, 327 N.E.2d 287; *People v. Evans* (1966), 72 Ill. App. 2d 146, 218 N.E.2d 781.

Notwithstanding the strong suspicion that the defendant possessed narcotics, the Illinois Supreme Court in *Jackson* reversed the defendant's conviction where she had locked herself in the bathroom of her apartment when the police arrived, the bathroom had a window which opened onto an air well, and the police found narcotics among the debris at the bottom of the air well underneath the defendant's window. The *Jackson* court found that "the most that can be said is that the defendant had access to the area, in common with the tenants of seven other apartments." (*Jackson*, 23 Ill. 2d at 364.) The supreme court especially noted that "[w]e are not so naive as to ignore the very strong possibility, amounting perhaps to a probability, that the defendant was indeed in possession of the heroin. Mere probabilities, however, will not support a conviction." *Jackson*, 23 Ill. 2d at 365.

Similarly, in the present case, we do not naively disregard the cogent argument that defendant, most likely with Victor and Guillermo Valdez, indeed possessed, at an indefinite time, the cocaine with intent to deliver. In fact, defendant conceded that sufficient evidence, *i.e.*, her fingerprints on the tape which sealed the bags containing the cocaine, established her possession of the drugs at some point in time.

However, we are faced with a particular point in time, *i.e.*, when defendant was in Cook County.

We are not allowed the luxury of conjecture, speculation, or surmise as to how the narcotics arrived at where they are found and, therefore, the conviction cannot be allowed to stand. *Stewart*, 27 Ill. App. 3d at 523.

Based on our review of the evidence in the light most favorable to the prosecution, we believe that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt in Cook County. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461.) Constructive possession is based on the defendant's control of the premises where the drugs are located. In the present case, the drugs were located in the trash can in one of the rest rooms on an airplane in which defendant was but one of approximately 70 occupants.

Accordingly, we reverse defendant's conviction due to the State's failure to prove beyond a reasonable doubt that defendant, either individually or under the theory of accountability, possessed the cocaine in Cook County. In light of this reversal, we need not address the remaining issues raised in this appeal.

Judgment reversed.

RIZZI and CERDA, JJ., concur.